**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 20, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 03-50462

———————————

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

                        versus

DONTE CHAVFUL,

                                        Defendant - Appellant.

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

( 01-CR-412 )

Before GARWOOD, HIGGINBOTHAM, and SMITH, Circuit Judges.

PER CURIAM:[*]

       Donte Chavful appeals his jury trial convictions for two
counts of conspiring and attempting to obstruct, delay, and affect
commerce by robbery in violation of the Hobbs Act,[1] and for one
count of using or carrying a firearm during a crime of violence in
violation of 18 U.S.C. § 924(c).  Chavful contends that (1) the
evidence was insufficient to support his Hobbs Act convictions, (2)

———————————

       [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

       [1] 18 U.S.C. § 1951(a) (2000).

the district court allowed the indictment to be constructively amended, and (3) the district court abused its discretion by excluding evidence of his prior state court acquittal, and by admitting a letter indicating his involvement with a gang, expert testimony explaining the letter, and a handwriting expert's testimony regarding Chavful's attempt to disguise his writing. We AFFIRM.

I

On August 2, 1994, an airport shuttle driver was shot and killed during an attempted robbery in San Antonio. Julius Steen, a known gang member, was arrested on August 15 for a different shooting, and admitted during questioning that he took part in the shuttle driver's shooting as well. Steen became an informant for the state, testifying that he, along with Donte Chavful and Dwayne Dillard, as members of the same gang, conspired to rob the airport shuttle driver. Steen testified that Dillard drove the car, Chavful shot the driver, and Steen rode in the back seat. Texas charged Chavful with murder, but he was acquitted.

The United States charged Chavful with conspiring and attempting to obstruct, delay and affect commerce by robbery of the airport shuttle in violation of the Hobbs Act. The Hobbs Act indictments at issue alleged that Donte Chavful:

> did knowingly and willfully conspire, combine, confederate, and agree together with others known to the Grand Jury to in any way and degree obstruct, delay, and affect commerce

2

and the movement of any article and commodity in commerce, by robbery of the driver of a Star Shuttle airport van - an instrumentality of commerce, who was then waiting beside the Crockett Hotel in San Antonio, Texas, all in violation of Title 18, United States Code, Section 1951.

The jury found Chavful guilty of the Hobbs Act charges and of using or carrying a firearm during a crime of violence.

II

A

Chavful first asserts that there was insufficient evidence to convict him of conspiring and attempting to obstruct, delay, or affect commerce by robbery.  He claims that because the indictment alleged that he obstructed commerce by robbery of "a van - an instrumentality of commerce," the government was specifically required to prove that the airport shuttle was an instrumentality of interstate commerce.  Chavful urges that the government failed to do so, and the district court allowed him to be convicted based on any effect on interstate commerce was erroneous.

In reviewing a challenge to the sufficiency of evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

---

[2] *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001).

The two essential elements of a Hobbs Act violation are (1) a robbery, extortion, or attempted robbery or extortion, and (2) a resulting interference with commerce.[3] Commerce is defined broadly, reaching to its constitutional limit.[4] If an indictment charges nonessential facts, the government is not required to prove them to obtain and sustain a conviction.[5] "[T]he Government need not prove all facts charged in the indictment as long as it proves other facts charged in the indictment which do satisfy the essential elements of the crime."[6]

Given the essential elements of the Hobbs Act violation and the applicable caselaw, Chavful's argument fails. The Hobbs Act counts only required the government to prove an attempt and a conspiracy to affect commerce by robbery. The indictment charged that Chavful "did knowingly conspire, combine, confederate, and agree together with others . . . to in any way and degree obstruct, delay, and affect commerce and the movement of any article and commodity in commerce, by robbery of the driver of a Star Shuttle airport van – an instrumentality of commerce." Because an effect

---

[3] *United States v. Robinson*, 119 F.3d 1205, 1212 (5th Cir. 1997).

[4] *Id.*; 18 U.S.C. § 1951(b)(3).

[5] *Robinson*, 974 F.2d at 578; *United States v. Hughes*, 766 F.2d 875, 879 (5th Cir. 1985); *United States v. England*, 480 F.2d 1266, 1269 (5th Cir. 1973).

[6] *England*, 480 F.2d at 1269.

4

on an instrumentality of commerce is not an element of a § 1951(a) violation, the charge in the indictment that the airport shuttle was an instrumentality of commerce was surplusage.[7] The government's evidence demonstrating that various aspects of commerce were affected by the robbery - a contention that Chavful does not dispute on appeal - was sufficient to allow the jury to find all essential elements of the Hobbs Act violations beyond a reasonable doubt.

B

Chavful next asserts that the indictment was constructively amended. He reads the indictment as charging him with affecting only one particular type of commerce - the airport shuttle. He urges that despite this limitation, the jury was allowed to convict him upon finding that the robbery affected any type of interstate commerce. Chavful relies on the rule established by *Stirone v. United States*: "when only one particular kind of commerce is charged to have been burdened[,] a conviction must rest on that charge and not another."[8]

Once a grand jury returns an indictment, its charges may only be broadened by the grand jury itself.[9] A corollary of this rule

---

[7] *See Robinson*, 974 F.2d at 578; *Hughes*, 766 F.2d at 879; *England*, 480 F.2d at 1269.

[8] *Stirone v. United States*, 361 U.S. 212, 218 (1960).

[9] *Id*. at 215-16.

5

is that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him."[10] "A constructive amendment to the indictment occurs when the jury is permitted to convict the defendant on a factual basis that effectively modifies an essential element of the offense charged in the indictment."[11] An indictment may be constructively amended by evidence offered or by jury instructions.[12] However, "[n]ot every variance between the indictment's allegations and proof at trial engenders a constructive amendment. For example, no constructive amendment arises 'where the evidence proves facts different from those alleged in the indictment, but does not modify an essential element of the charged offense.'"[13] If a constructive amendment occurs, the conviction must generally be reversed.[14]

To find a constructive amendment here, the evidence adduced at trial or the jury instructions must have permitted the jury to convict Chavful on a factual basis that effectively modified the

---

[10] *Id*. at 217.

[11] *United States v. Millet*, 123 F.3d 268, 272 (5th Cir. 1997).

[12] *Id*.

[13] *United States v. Munoz*, 150 F.3d 401, 417 (5th Cir. 1998) (quoting *United States v. Salvatore*, 110 F.3d 1131, 1145 (5th Cir. 1997)) (internal citations omitted).

[14] *United States v. Threadgill*, 172 F.3d 357, 370 (5th Cir. 1999).

6

essential elements of the Hobbs Act charges.[15]  Contrary to Chavful's assertion, the indictment did not charge that only one particular kind of commerce was affected; instead, it charged that Chavful did [conspire and attempt to] "in any way and degree obstruct, delay, and affect commerce and the movement of any article or commodity in commerce, by robbery of the driver of a Star Shuttle airport van - an instrumentality of commerce."  Unlike the indictment in *Stirone*, which charged that the defendant's extortion affected one specific commodity in commerce, Chavful's indictment clearly charged that commerce in general was affected by his robbery of the airport shuttle.  This indictment limits the government to proving an effect on commerce as a result of the robbery of the shuttle, and the evidence and jury instructions stayed true to this limitation.  Accordingly, the latter part of the *Stirone* rule applies: "under an indictment drawn in general terms[,] a conviction might rest upon a showing that commerce of one kind or another had been burdened."[16]  Neither the evidence of the robbery's affect on various aspects of interstate commerce nor the jury instructions constructively amended the indictment.

C

Finally, Chavful argues that the judge erroneously admitted into evidence (1) a letter Chavful wrote that demonstrates his

---

[15] *Millet*, 123 F.3d at 272-73.

[16] *Stirone*, 361 U.S. at 218.

7

affiliation with a gang and refers to the people involved in the conspiracy, (2) an expert's testimony explaining elements of the letter, and (3) a handwriting expert's testimony that Chavful disguised his handwriting in samples given to the FBI. Chavful asserts that this evidence was irrelevant, and assuming relevancy, was unfairly prejudicial. Chavful also asserts that the Judge erred in refusing to admit evidence of his prior state acquittal. Considering the charges, Chavful's assertions at trial, and the nature of the evidence admitted, there is no reversible error.

We review evidentiary rulings under a deferential standard.[17] Reversal is warranted only when the admission constituted an abuse of discretion.[18] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[19] Otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[20] The trial judge has broad discretion over determinations of relevance under Federal Rule of Evidence 401 and

---

[17] *United States v. Elwood*, 999 F.2d 814, 816 (5th Cir. 1993).

[18] *Id.*

[19] FED. R. EVID. 401.

[20] FED. R. EVID. 403.

8

unfair prejudice or confusion under Federal Rule of Evidence 403.[21]

The gang letter was probative of Chavful's association with other members of the conspiracy. It also served to rebut Chavful's attempt to distance himself from the gang and the other members of the conspiracy. Chavful asserts that the letter's admission was unfairly prejudicial because the letter includes violent and obscene language, racial slurs, and threats. While the language of the letter was prejudicial to Chavful, it was not unfairly prejudicial. Chavful does not dispute that he wrote the letter, and the letter clearly serves to associate him with the gang and other members of the conspiracy. Finally, the district court gave extensive limiting instructions to the jury, explaining that gang membership was not inherently bad and that gang membership was not an issue in the case. The highly probative value of the evidence, coupled with the judge's limiting instructions, belies Chavful's assertion that the evidence's relevance is substantially outweighed by its unfair prejudice. Under these circumstances, the court did not abuse its discretion.

Second, Chavful asserts that the gang expert's testimony was irrelevant because the letter itself was irrelevant. This argument fails for the reasons above. Furthermore, the letter included various slang terms that would be meaningless without the

---

[21] *United States v. Madera*, 574 F.2d 1320, 1322 (5th Cir. 1978).

assistance of an expert's explanation.  The judge did not abuse his discretion by admitting the testimony; its relevance was not substantially outweighed by the danger of unfair prejudice.

Third, Chavful contests the admission of the handwriting expert's testimony regarding his attempt to disguise his handwriting.  He claims that because there was no dispute that he wrote the letter, the expert's testimony was irrelevant and was included only to inflame the jury.  However, under our caselaw, a jury may consider attempted disguise as demonstrating a defendant's consciousness of guilt.[22]  Chavful does not respond to this authority.  Even assuming that the district court abused its discretion by admitting the testimony, any error would be harmless. The government presented a significant amount of evidence demonstrating Chavful's involvement in the robbery and his association with the coconspirators.

Finally, Chavful argues that the court erred in excluding evidence of his prior acquittal.  Based on the following evidence and events put before the jury, he asserts that his presumption of innocence was improperly eroded:  (1) two jurors saw him in handcuffs; (2) during his testimony, Steen referred to an event that occurred "after Chavful's trial," which Chavful views as implying that he was tried and convicted in state court; (3) the

_____

[22] *See United States v. Stembridge*, 477 F.2d 874, 876 (5th Cir. 1973); *see also United States v. Jacobowitz*, 877 F.2d 162, 169 (2d Cir. 1989).

10

person who obtained the gang letter testified that she got it from an inmate who had received it from Chavful, which Chavful views as implying his incarceration from a conviction; and (4) a sheriff testified that Chavful had a visitation list at the prison.

His argument is without merit. It is axiomatic that a criminal defendant has a constitutional right to a presumption of innocence.[23] The Court has left trial judges to determine what evidence and procedures may erode the presumption "based on reason, principle, and common human experience."[24] Courts have found the presumption impermissibly eroded by requiring a defendant to wear prison attire throughout the trial.[25] However, the nature of the evidence at issue here did not rebut the presumption of innocence.

Contrary to Chavful's assertion, the court did not abuse its discretion by refusing to admit evidence of Chavful's acquittal because the evidence at issue did not rebut the presumption of innocense. As we explained in *United States v. De La Rosa*, "as a general matter, a trial court does not abuse its discretion in excluding evidence of a prior acquittal on a related charge."[26] We noted that evidence of acquittal is irrelevant to the defendant's

---

[23] *See Estelle v. Williams*, 425 U.S. 501, 503-04 (1976).

[24] *Id*. at 504.

[25] *Id*. at 504-505, 512-13.

[26] *United States v. De La Rosa*, 171 F.3d 215, 219 (5th Cir. 1999).

innocence, is unexempted hearsay, and any relevance may be outweighed by the danger of unfair prejudice and jury confusion.[27] Chavful does not cite any authority explaining why *De La Rosa*'s general rule should not control. Moreover, other evidence illustrates that any burden on Chavful's presumption of innocence must have been neutralized. Evidence before the jury clearly showed that Chavful must have been acquitted in state court. Namely, there was evidence that he was visiting people outside of jail between the crime at issue and the federal trial; the only implication is that if they knew a state trial occurred, Chavful must have been acquitted.

III

For these reasons, Chavful's convictions are AFFIRMED.

---

[27] *Id*. at 219-20.